on behalf of the people, Ms. Lisa Anne Hawk. Ms. Montgomery. Good morning, your honors, counsel, may it please the court, I am Janie Montgomery from the Office of the State Appellate Defender appearing today on behalf of Mr. Carlos Hernandez. This appeal raises one issue, whether the circuit court erred in denying Mr. Hernandez's motion to suppress evidence obtained from an unlawful search. The defense attorney below conceded, as do we now on appeal, that the stop in this instance was valid. On what basis? On the fact that Officer Curran did observe Mr. Hernandez riding his bicycle at night without a headlamp on. I have a special preliminary question to ask you, could be, I think, very significant. Does this law apply on private property? In other words, let's assume the evidence establishes that he didn't have a headlamp on, which is arguably a violation of the vehicle code, but he's riding it on school grounds, he's not on the highway, is he? He's not on the highway. There wasn't enough here on the record for me to be able to determine where in the parking lot he was, whether it would have been feasible that he could have arrived at that location without ever having ridden on a highway. I mean, you see, I'm asking the question. I do. There are certain courts, as you know, in the DUI law, assembly suspensions, where you can commit a DUI even on private property, but assembly suspension, you have to be on a public highway. So the question that was in my mind is, does this apply to somebody riding a bike solely on private property? Do you know the answer to that question? I do not know the answer to that question. If you look at the traffic code, and at the bicycle provisions in particular, section 1502 says, every person riding a bicycle upon a highway shall be granted all the rights and shall be subject to all the duties applicable to the driver of a vehicle by this code, and then it goes on to accept as to special regulations in this article and accept for those provisions of this code, which by their nature can have no application. So in other words, as Justice Hudson alluded to, you're conceding a point which might ultimately lead you to lose the case, because if you're conceding that there's a basis for a stop, there's a basis for an arrest, and therefore a basis for a pat-down. I don't believe there's a basis for an arrest here, Your Honor. Well, why not? If you have a violation of the traffic code, why wouldn't there be a basis for an arrest? The case law has said that. Yes, it has. However, in this instance, the only violation would have been the headlight violation, and as we know from Knowles v. Iowa and the Illinois Supreme Court case of People v. Jones, which adopted Knowles, a traffic stop is akin to a tarry, a brief tarry stop, and you cannot have a pat-down incident to a citation, therefore, in order to have, here, in order to pat him down, the officer still would have needed reasonable, articulable concern. I think we're blending the two, and that's, maybe there was some confusion below. Is this a tarry pat-down search, or tarry plus a pat-down, or is this a search incident to an arrest? The case law says that if you have probable cause to arrest somebody for a traffic violation, whether you do the search somewhat before the pat-down, before you actually arrest him, is not determinative of the validity of the arrest. If you have the right to arrest somebody for any traffic violation, you have the right to do a search incident to an arrest. So whether or not tarry would apply, that would only be the fallback position in the event the officer couldn't have arrested him. But since you have alluded to that there was a legitimate basis to give a traffic citation or charge him with violation of not having a headlight on him, why would the case turn on tarry, then? Well, I think, going back to whether or not this was a search incident to arrest, we, the officer did need to have a reason to believe this was more than just a general traffic stop, so that there was something beyond, you know, the fact that he was riding a bicycle without a headlight on happened before he was searched, or pat it down? Yes, it did. And wouldn't then that mean, then, in a timeline, that it would seem that the officer, after observing the alleged violation of the flashlight or headlight on a bicycle, would have probable cause to arrest the defendant if the police officer so desired? Which then meant whether or not there was a tarry stop is hypothetically irrelevant, or it is irrelevant, because if he has probable cause to arrest, doesn't that just kind of make moot the argument, or make irrelevant the argument relative to a tarry stop? Well, I think the question here about whether or not, you know, yes, the law says that... If you saw him spinning on the sidewalk and then went up to him and started talking to him about why are you here at 1 o'clock in the morning or so on and so forth, and it's a city ordinance that says that you, of course, if it's a city ordinance, I might not be subject to arrest. But be that as it may, the point we're getting at is that your tarry stop, we may find that yes, it was a tarry stop, and yes, there was error. But it wasn't error because there was probable cause to arrest. So we don't affirm or reverse based upon the arguments that are made below. We do it on what the law is in general or applicably, applicable to the situation. And when Justice Burkett talked about conceding something, I don't have a problem with you conceding something unless, of course, the concession is an error. So the fact that it may or may not affect your client in a very substantial way isn't as important as whether or not it's an erroneous concession. And so that's where we're coming from. Well, I would love to brief the question of whether or not this was a search incident to arrest, if your honors would so order. I don't know that you need to go that far. I guess my other question would be, can you waive a statute? I mean, if you don't have, if you can't arrest somebody for not having a light on a bike on private property, you concede that. I don't know how you could ever really do that. Can you waive the law? I don't believe so. I wouldn't suggest you try either. So I think that, you know, off the top of your head, obviously, you don't know the answer to my initial question, whether or not this even applies on private property. Correct. Perhaps we should direct the parties to brief that issue. That would be fine. There's case law that says that even in a situation where the state failed to make an argument, which is virtually identical to this, which was whether or not there was a search incident to arrest, the state failed to make that argument. It went up on appeal, and because the state didn't make the argument, the appellate court suppressed the evidence or affirmed the trial court. It went up to the Supreme Court. The state then made a change in its strategy and argued for the first time before the Supreme Court that it was a search incident to arrest. And the Supreme Court decided that based upon its need for a uniform body of law, it would waive waiver, and it allowed the argument to be made to it that it was a search incident to arrest, despite the fact that there was, quote, unquote, in the trial court and in the appellate court below. I was on the panel. I may have even written the case, if I recall correctly. We determined that the state's argument that it had probable cause to search was against the, was not against, pardon me, the failure was not against the manifest way in which we affirmed the trial court's oppression. They then go to the Supreme Court and argue search incident to arrest. We get reversed. The trial court gets reversed on the basis that in order to have a uniform body of law, there can be waiver of waiver. So that was somewhere in the area around 1990 to 92, somewhere around there. So if you'd like to do some briefing, I have no objection to it yet. Do we wish to enter an order or do we want to enter an order now or after our argument? Your argument. We'll hear our argument. Continue, please. Well, what I have prepared is an argument based on the Terry, so I can continue on that. But I do want to go back to the search incident to arrest point just to, again, direct your honors to People v. Jones, which is an Illinois Supreme Court case in which it was found that even in a uniform traffic, or in a general traffic stop, we do analyze it under Terry and to find whether or not a search on a traffic stop is reasonable as a search incident. You know, if you're going to search somebody in a traffic stop, it is analyzed under Terry. The officer does need to be able to articulate specific facts that put this outside the realm of a general traffic stop, and here we do not have that. Here, the only thing that Officer Kern was able to get anywhere close to saying that this was a situation where he felt endangered or where there was some danger was when he was led by the prosecutor that he had some concern for the school since the defendant was there at night. Well, that's not really compelling. I mean, the school, there's nobody there at the school. As I recall the record, when the prosecutor asked the officer himself if he thought he might be in danger, he said, no, I guess no. Right, and I'm saying that the officer's concern for the school is not at all applicable here. It doesn't... It's not during school hours. It's not during school hours. There's nothing to say that there was any... There was no... There was nothing here that was a reasonable, articulable... Was the police officer qualified to indicate that he had, in the past, identified contraband by field in pockets on mannequins or otherwise? I believe he was questioned about that. I don't know that he said anything about being trained. I believe he said that he talked about the times that he comes into contact with drug paraphernalia and how long he'd been a police officer. But in terms of feeling the pipe in the pocket, he talked about that briefly, yes. Your position, very simply, is the Pentagon, obviously, would not be valid under Terry. There's no reasonable, articulable basis for fearing for anybody's safety. Correct. However, what remains unresolved is you'd have to concede that search engine to an arrest might put your client in a different position. It may. However, I still maintain my position that, you know, while below the stage alluded to perhaps the defendant was trespassing, and I believe the officer testified that he thought the defendant was trespassing, there's nothing in this record to indicate that this was a trespass. Was it posted? There was no evidence that it was posted? There was no evidence that it was posted. So it wasn't a trespass. So that's a pretty weak point. Exactly. So we're left with the only offense here that he could possibly be arrested for was the bicycle headlamp offense, which if the law is that a parking lot is not a highway, then there is no probable cause to arrest here. If you can't commit the offense on private property, then you couldn't arrest him for it. Ergo, the search engine and the arrest, false. Correct. That's pretty simple and straightforward. Yes. I guess seeing no other questions, we would just ask this court to reverse the 12-4 clause. If you have an opportunity to make a rebuttal. Ms. Hoffman. Excuse me. May it please the court. I will begin by saying that I also cannot answer with certainty Justice Hudson's question about whether or not you can, you must be a highway. Commit the offense in a parking lot. Right. When I was reading the briefs, that was the first question that came to my mind. How can you possibly justify the stop? The bicycle code for highways applies to highways. Otherwise, children on their own front yards would be constantly being ticketed for having unsafe vehicles. And so would you if you drive around your property. Yes, that's true. I even have a lawnmower without lights. I didn't want to bring that up, but now that you've raised it. But I do wear my seatbelt. That's very prudent. I can't disagree with any of that. I think the record is not adequate to reflect where precisely the defendant was. The officer says that he arrested him in the parking lot. I think there's, or not arrested, I'm sorry, he stopped him in the parking lot. Saw him riding in the parking lot. Right. But that he had come from near the school. The record simply doesn't bear out anything more than that. But I understand that he'll be doing additional work. Whose burden is it to prove that? Pardon me? Whose burden is it? It is the defendant's burden to prove that, I believe. Because the defendant has the burden that a motion does press. Isn't it the burden on the state to prove probable cause? Which means that it has to prove that, for instance, if you're driving and it's suspended. In fact, not this judge, but the judge in a, John Kinsella, when he was an assistant state attorney, wondered why I found someone not guilty for a suspension. And I said because he was allegedly only seen on private property. So the point is, is that it's not the burden of the defendant to prove or establish or point out the defects in the state's case. And if the state is required, once he's testified I was doing nothing wrong, it then goes on the state to say, yes, you were doing something wrong. You were driving without a headlight on a public street. The fact that he fails to say it wasn't on a public street doesn't mean that I as a judge can say, well, since he didn't say it was a public street, I have to go by what the law is relative to suspensions. I knew what the statute said and I found the person not guilty because the state didn't present evidence that he was on a state highway at the time. Here you haven't, to my knowledge, established that this person was driving a bicycle in violation of the vehicle code on a street or a highway. Public street or highway, not a private street. So I'm submitting to you that if we ask for further briefing, you can point, you can make that argument in your briefing. Which is what I was just going to say, which is that it appears that we will be doing additional briefing and we will certainly address those issues in the brief. I think, Justice McClain, you asked about whether the officer was, whether there was any testimony that he had particular training with drug paraphernalia and mannequins and the like. I don't believe so. I think that counsel was correct in suggesting that there was some testimony at the very beginning of his questioning on his years as an officer. Then on page 13, actually I think it's maybe page 31. I might be wrong. Yes, page 31 of the record, the officer says, I patted him down and the outside of his clothes and the left pocket of his sweatpants, I felt a meddling bull, which I, from my prior police experience, believe to be a marijuana smoking pipe. I think that's the extent of the qualification of this officer in this record. That's enough. I mean, unless the defendant challenges it. Right. I agree. The problem is, how do you get to the pat-down? If there's no basis for the stop, or even if there is a basis for the stop, and there's no violation because he's not on a highway, there's not going to be an arrest, where's the justification for the pat-down? So I will talk about it in the Terry context that we did in the brief. I think that it's – let me first say that I do think the record indicates a level of some confusion or maybe amalgamation of the two concepts of incident to arrest and Terry, because it's clear the State did make an argument at the very end of argument. The State makes an alternative argument where we use the phrase search incident to arrest. The Assistant State Attorney, however, talks about probable cause based on the feeling of the pipe, which I think I would – that's certainly not what we're talking about with respect to the headlight. And then the court itself, when it made its ruling, starts by saying – this is on page 39 of the record – that the standard is objective, and I think the officer had probable cause. So at that point, our probable cause would be arrest versus reasonable – So I think you agree that's your strongest argument. If, in fact, there was invalid – was, in fact, a violation of the code that applies here on private property, you're going to go search incident to an arrest because the officer's subjective fears don't enter into the analysis at that point. Yes. Can you give us some reasons why you think that if it falls back to Terry, it is a valid patent? Well, I think that these are the factors that we can look at on this record. We have an officer who observes the defendant without a headlight. We have – he testifies that he knows there were burglars in the area, although he was unable to say if he knew there had been any burglaries that particular night. It's – he's alone. He's a single officer. It is late at night. I am aware that that's not – it's by itself not sufficient, but it is a factor to be considered. And the officer testifies that the defendant had a – was somewhat – An attitude. Yeah, he had an attitude. He was – showed – was loud and upset. So those things all put together, when you look at it objectively, would an objectively – a reasonably prudent person in the circumstances be warranted in the belief that the safety – safety was – or that of others was in danger, and that's what Flowers tells us. And our position is yes, those factors all put together, and the totality of those gives you a basis for this officer to have been concerned for his safety and to conduct that frisk in order to make sure that – And that has some appeal, except that the officer undercut it by saying, I didn't fear for my safety? Well, this officer certainly was not – he was somewhat equivocal. He said he wasn't afraid, essentially. He did, although then he later said he – well, he was – you know, it led – the fact that the defendant was there at the school led him to be concerned for the safety. But I will agree with you that it's not – There are numerous cases that say that at nighttime, even where there has been recent burglaries, those factors are not enough. Do you have a case that says that if a defendant is boisterous or loud, that that gives reasonable suspicion that somebody might be armed or dangerous? I do not have a case that says that on – any of those factors on their own. But I think when you combine all of the factors – so, as I said, I'm aware late at night isn't sufficient. Darkness late at night. But you have an officer who's alone. You have an upset and attitudinal – if that's a word – defendant. You have burglaries in the area. You have those things all put together. I think that's what gives you that objective basis on which to uphold the frisk. If there are no further questions. I don't know. Thank you. Thank you. Thank you for coming today. I'll just briefly address the argument that the officer – that there was overall enough here for a Terry frisk. And as my colleague pointed out, and as I cited as additional authority, Justice Burkett's decision in Fox, wherein they've discussed the fact that it's nighttime really doesn't enter into the equation unless there are other factors that would lead one to reasonably believe the situation is dangerous. And here we just don't have that. When did you file that motion? Tuesday. I did supply an extra copy of the – I've seen the motion. Has – have you, Ms. Hoffman, seen the motion? Do you have any objection to it? No. Thank you. The motion will be pulled out. Thank you. I'm sorry for not saying that she wasn't objecting. And as I talked about in the brief, the fact that there were burglaries in the area, here they're just – this general statement is not enough. We don't have any testimony that – or any evidence that this was a high-crime area. And there's certainly case law now that says that just leaving somebody – even if the officer had testified that he suspected that Mr. Hernandez was a burglar, that would not have been enough under Galvin to frisk him. And I know that that factor played into the decision in McGowan, and nothing has overturned McGowan. However, I think the Galvin decision, which came out about 12 years after McGowan, certainly calls into question whether or not believing somebody might be a burglar is a valid factor at this point. Also, the fact that the defendant was a little bit loud and had a little bit of an attitude and seemed upset that he was being stopped by the police officer is not unlike any person you would see getting arrested. Most people, when arrested or when they're stopped by a police officer, are confused, scared, and might talk a little bit loud. However, I think the important thing to remember is that in addition to his testimony that the defendant was a little bit loud, the defendant complied with every order the officer gave immediately. The officer also testified that the defendant was overall cooperative. So the fact that he might have been a little bit loud I think is undercut severely by the officer's statement that the defendant was cooperative and the fact that the defendant complied completely. In his conversation with the officer, did the defendant indicate where he was going to or where he was coming from? The record does not reflect that, no. I believe the only thing the record reflects is that the defendant said, I didn't do anything wrong or asked why he was being arrested or stopped. If there's no further questions, I ask the court to reverse the defense conviction. Thank you. There's another case on the call. We'll take a short recess.